# Isadora Weber *v.* The Metropolitan Life Insurance Company, Appellant.

*Insurance—Life insurance—Insurable interest—Aunt and nephew,*

Where an aunt stands essentially in loco parentis to a nephew who lives with her she may insure his life to the extent of one hundred and ninety dollars.

*Insurance—Application—Agent of assured—Beneficiary—Misrepresentations.*

When the agent of an insurance company fills up the answers to questions in a blank form of application in the absence of the assured and not from information derived from him, and obtains the mark of the assured to the application without reading it to him and without making him acquainted with its contents and without any explanation whatever, the assured will not be held to have warranted the correctness of the answers; and when it does not appear that the beneficiary misrepresented any material facts in procuring the policy, he will be entitled to recover upon it.

*Insurance—Materiality of misrepresentation as to cause of death of parents — Consumption—Medical belief—Question for jury.*

In view of the modern medical belief that consumption is not hereditary, the question whether the misrepresentation by an applicant for insurance to the effect that his parents did not die of consumption is or is not a material misstatement is one of fact for the jury.

Argued Oct. 24, 1895. Appeal, No. 108, Oct. T., 1895, by defendant, from judgment of C. P. No. 2, Allegheny Co., Jan. T., 1894, No. 818, on verdict for plaintiff. Before STERRETT, C. J., WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed by divided court.

Assumpsit on a policy of life insurance. Before EWING, P. J.

At the trial it appeared on April 27, 1891, the defendant insured the life of Edward Milner for $190, plaintiff being named beneficiary. Milner was nineteen years of age at the time, and lived with plaintiff who was his aunt, and who stood to him essentially in loco parentis. The material facts of the case appear by the charge of the court which was as follows:

Mrs. Isadora Weber has brought suit against the Metropolitan Life Insurance Company to recover $190 on a policy issued to Edward Milner, which, the evidence indicates, was for her

benefit, and on which she paid the dues, premiums, assessments, or whatever they may be.

The policy is dated the 27th day of April, 1891, and insures the life of Edward Milner for $190, under the conditions therein stated.

It seems that the application or arrangement was made, and the premium first paid on the 13th of April, 1891, to Mr. Powers, an agent for the company and a solicitor of insurance. The rate was ten cents a week. The policy was not issued until the 27th day of April, 1891.

Edward Milner died on the 29th day of June, 1893, and it is admitted that proofs of death were made. He was a nephew of the plaintiff, and was, it seems, at the time the insurance was procured, and for some time before and after, living with her.

One of the defenses was, that the deceased had never made this application, nor did he know or approve of it; and on the defendant's evidence there was some ground for that, apparently. The uncle and aunt of the deceased say that he was in Ohio attending the funeral of his brother, who died on the 11th, or about that date, and, in addition to that, while he could write his name, the application shows that his name was not written by himself, but signed by a mark. Counsel for defendant very frankly tells you that he thinks the weight of the evidence is against the statement of these people in Ohio that this death and funeral occurred in April, 1891. A brother and the aunt, who say that they attended the funeral, and one or two other witnesses fix it as in the year 1892 instead of 1891, and give their reasons for fixing it at that time. Then the man who took the application and received the money explains how the deceased came to sign the application by his mark, saying he was at work with a hose on a pavement, and his hands were wet and cold, and, for that reason, he signed it by just making the mark, and the aunt says she saw him make it.

The important defense, and one that counsel for defendant has argued to the jury, is this, that misrepresentations were made in the application, the leading one being that none of his relatives had died of consumption, whereas the proofs of death and the evidence indicate that the father and mother had each died of consumption, one at thirty-eight and the other at thirty-nine years of age, their age at death being given in the application as seventy and seventy-five.

The policy provides that the warranties and agreements in the printed and written application are to be made part of the contract, and are to be treated as warranties. We instruct you that they are not, in this case, to be so considered, because the act of assembly provides as follows:

" All life and fire insurance policies upon the lives or property of persons within this commonwealth, whether issued by companies organized under the laws of this state, or by foreign companies doing business therein, which contain any reference to the application of the insured, or the constitution, by-laws, or other rules of the company, either as forming part of the policy or contract between the parties thereto, or have any bearing on said contract, shall contain, or have attached to said policies, correct copies of the application, as signed by the applicant, and the by-laws referred to; and unless so attached and accompanying the policy, no such application, constitution or by-laws shall be received in evidence, in any controversy between the parties to, or interested in, the said policy, nor shall such application or by-laws be considered a part of the policy or contract between such parties."

[This application was not attached to, nor is it part of, the policy; and, therefore, even though it is in evidence, as we construe the law, it is not a warranty. And there is the more reason for it in this case, because the beneficiary—the one from whom the premiums were taken, and for whose use the policy is made—did not sign the application. (There is no evidence that she ever heard it read, or that she saw or knew what it contained.)] (2) The application is produced by the company to-day, it having been in their possession. But, nevertheless, this is not without its significance in this case. A policy obtained by fraud, or knowingly misrepresenting some important fact, would be void as to the company if they did not take money on account of it after they knew of the fraud, or did not do something to estop them from setting it up.

[Now, if you find that the parents of this man died at this early age, of consumption, and that was an important, essential and material fact, the misrepresentation of which resulted in the obtaining of this policy, and the company was deceived thereby, without fault of its own, and that it did not receive money on the policy, after it knew the facts, then it would avoid

the policy, whether such misrepresentations were made by Milner, the deceased, or Mrs. Weber, and the plaintiff cannot recover.

The court cannot say as matter of law, in the present state of medical science, that such a statement is a material misrepresentation. Ten years ago I think I would have been disposed to say, as matter of law, that it was. There has been great progress made in medical science since that time, and I am, perhaps, safe in stating that recently the most advanced and able pathologists—those who are recognized in the profession as standing at the head of it—have said that consumption is not hereditary in the sense in which it used to be generally understood, and perhaps is yet by the mass of people; and very likely I will die with some of my early ideas about it clinging to me, notwithstanding the learned discussions on bacilli and bacteria. It seems to be generally conceded that consumption is caused by bacilli that take possession of different parts of the human body, and although the child is not born with it, it may have susceptibilities in that way, and it is said, by proper care, the disease may be prevented, and that people of consumptive parents may reasonably be expected to live out a fair period of life. But that is for the jury to say, and in determining the question, you will take into consideration the fact that in their application they ask these questions, and ask a great many in their proofs of death.] [4] Even in their policy they speak of consumption, and provide against paying the full amount of the policy if death occurs from that cause within a year. I rather think, if I were on the jury, that I would find it was a material fact, but still it is for you.

[A more serious or more doubtful question, I think, is this: The testimony of the agent is that he filled up these answers; that he did not get them from Milner; that he did not read them over to him, nor tell him what they were, and Milner simply made his mark. It is not my recollection that the agent said he got these answers from Mrs. Weber.] [3] A peculiar feature of it is the statement of the age of this young man. It is said he was then between nineteen and twenty, if I recollect right, and that on his next birthday he would be twenty. The mother was dead, it does not say how long, but she was over fifty years of age, according to that, when he was born.

Now, if the agent put those answers down of his own motion, without asking questions, or informing these parties what they were, then it is the act of the company. A company cannot send out agents who take applications and fill them up, without making them known to the party, and have them kept secret until the occasion comes to use them after death, when, for the first time, the applicant or beneficiary may know of such answers being in the application. Without any explanation you can fairly assume, and it would be proper to assume, that they were answered; but you have the testimony of the parties before you. If either Milner or Mrs. Weber made these representations and directed or authorized these answers to be made, then, if it were material, (as I have said to you, I would find, if I were on the jury), and that procured the policy, it is void. If not, and it was simply the representation of the agent, they cannot defend on that account. I repeat, that while it is evidence in regard to misrepresentation, the application not being attached to the policy, the truth or falsity of one of those statements does not necessarily avoid the policy.

As you find the facts you will find for plaintiff or defendant.

Defendant's point was as follows :

Under all the evidence the verdict will be for the defendant. *Answer.* Refused. [1]

Verdict and judgment for plaintiff for $206.53. Defendant appealed.

*Errors assigned* were, (1–4) above instructions, quoting them.

*W. K. Jennings*, for appellant.—Plaintiff had no insurable interest in the life of her nephew: Corson's App., 113 Pa. 438; Keystone Mut. Benefit Association v. Norris, 115 Pa. 446 ; U. B. Mut. Aid Society v. McDonald, 122 Pa. 324; Warnock v. Davis, 104 U. S. 775 ; Singleton v. Ins. Co., 66 Mo. 63 ; Brady v. Ins. Co., 5 Kulp, 505; Lenig v. Eisenhart, 127 Pa. 59; Scott v. Dickson, 108 Pa. 6 ; Overbeck v. Overbeck, 155 Pa. 5.

If the application is offered in evidence and relied upon by the plaintiff to make out her case, then she is bound by its statements: Mahon v. Ins. Co., 144 Pa. 409.

Not the slightest attempt was made to excuse the outrageous misstatement and there certainly can be no presumption in

favor of good faith. In this view of the subject the question as to the materiality of the matter misstated becomes of no importance, but if it is, the reasons assigned by the learned judge for refusing to charge as requested, seem entirely inadequate. He rests his refusal wholly upon the ground that pathologists now, perhaps, entertain doubts as to whether consumption is hereditary or not. Whatever may be the fact in this respect, there is, and always has been, a deep seated and very general opinion that consumption in the parents diminishes the probabilities of length of life in the children, and there can be no doubt but that the appellant would have rejected the application had the truth been revealed as to the disease which caused the death of both the parents of the insured, and that the concealment was a gross fraud upon the company.

*A. H. Mercer*, for appellee.—It is not against public policy for an aunt by blood, essentially standing in loco parentis to a nephew, to effect Industrial Insurance on his life to the extent of $190 for funeral expenses.

The contention of the appellant is that the application having been offered in evidence for the limited purposes of establishing the fact (not made to appear from the policy) that the appellee was a beneficiary, it is in for every other purpose ; that the answers in the application are to be considered as warranties and that the untruth of certain material representations in the application being established the appellee cannot recover on the policy. This contention is based upon a misconception of the meaning and effect of the act of May 11, 1881, P. L. 20 ; Mahon v. Ins. Co., 144 Pa. 409.

PER CURIAM, November 4, 1895 :

The six justices before whom this case was heard being equally divided in opinion, it is ordered that the judgment of the court of common pleas stand affirmed.